## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 13-40035-JAR** |
| **JEROLD D. FISHER,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Defendant Jerold D. Fisher filed a contested Motion for Appeal Bond (Doc. 90), which the Court heard on April 27, 2015.  Because Defendant has failed to establish that the appeal raises a substantial question of law or fact likely to result in a reduced sentence, the Court denies Defendant's request to release him on bond pending his appeal.

## I.     Background

On May 27, 2014, this Court held a sentencing hearing and entertained the parties' joint recommendation, pursuant to their plea agreement,[1] that the Court sentence Defendant to 36 months' imprisonment.  This Court expressed concern about that non-binding recommendation, given that the Sentencing Guidelines range was 41 to 51 months' custody, and given that there was no explanation as to Defendant's disposition of much of the $4 million in proceeds of the tax fraud—there was no evidence that it was dissipated though substance abuse or gambling, and in fact, there was no explanation with respect to much of the money.  The Court advised the parties that the sentencing hearing would be continued because of the Court's concern about the

_____

[1]Doc. 27.

disposition of the fraudulent tax refunds.  The procedural history and circumstances are well detailed in the Court's August 27, 2014 Memorandum and Order[2] granting the Government's motion for a determination that Defendant had breached the plea agreement, as well as in the Court's October 28, 2014 Memorandum and Order[3] granting Defendant's motion for reconsideration.  In its October 28 Memorandum and Order, this Court concluded that Defendant had not breached the plea agreement, such that the parties were bound by the plea agreement and such that the Government could not advocate for a sentence greater than the parties' agreed upon joint recommendation of 36 months; the Court further concluded that the Court was not bound by the terms of the parties' non-binding plea agreement.

At the final sentencing hearing on November 4, 2014, Defendant objected that the Government had also breached the plea agreement by filing new charges against him.  The Court overruled that objection, finding that the proper consideration of Defendant's concern would be in the context of a motion to dismiss filed in the new case, wherein the Court could hear evidence as to whether the new charges were based on information gained in a manner that was violative of the plea agreement.[4]  The Court heard the parties' joint recommendations for a sentence of 36 months, five months below the bottom of the 41-51 month Sentencing Guidelines range.  The Court found, based on the Guidelines and the 18 U.S.C. § 3553 factors, that the appropriate sentence was 41 months.  Defendant thereafter appealed the sentence to the Tenth Circuit Court of Appeals, and now moves the Court to release him on bond pending his appeal.

---

[2] Doc. 48.

[3] Doc. 65.

[4] The Government shortly thereafter dismissed the new charges, so the matter is now moot.

## II.      Discussion

Defendant claims that he should be released pending appeal, pursuant to 18 U.S.C. § 3143(b), arguing specifically that his appeal raises a substantial question of law or fact likely to result in a reduced sentence to a term of imprisonment less than the time served plus expected duration of the appeal process.[5]  Though the Government objects to this motion, it did not argue that there was clear and convincing evidence that there are no conditions or combination of conditions that would assure Defendant's appearance or the safety of the community.  Rather, the Government focuses on, as does Defendant, the issue of whether the appeal presents a substantial question of law or fact likely to result in a materially reduced sentence.  The Court agrees with the Government that it does not.

First, Defendant entered into a plea agreement, in which he waived most of his rights of appeal.[6]  The plea agreement provided that Defendant "knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court."  The plea agreement provided three exceptions to Defendant's waiver of his right to appeal the sentence: (1) the Court departs upward from the applicable Sentencing Guidelines range determined by the court; (2) the United States exercises its right to appeal the sentence imposed; or (3) the appeal is based on claims with regards to ineffective assistance of counsel or prosecutorial misconduct.  Here, the Court sentenced Defendant to the bottom of the applicable Sentencing Guidelines range and the Government did not exercise its right, under the terms of the plea agreement, to appeal the sentence imposed.  Moreover, Defendant raised three grounds

[5]18 U.S.C. § 3143(b)(1)(B)(iv).

[6]Doc. 27.

3

in his appeal, all relating to whether the Government breached the plea agreement, and none of which relates to ineffective assistance of counsel or prosecutorial misconduct.  Because the appeal does not appear to be outside the scope of Defendant's appellate waiver, the appeal does not raise a substantial question of fact or law that would likely result in a reduced sentence.

Nonetheless, for purposes of this motion, the Court will assume that Defendant's appeal is outside the scope of the appellate waiver.  That is, this Court will assume that Defendant may properly appeal the sentence based on his stated grounds that the Government breached the plea agreement, that this Court violated Fed. R. Crim. P. 32(i)(3)(B) by not ruling on Defendant's sentencing objections that the Government had breached the plea agreement, and that the Court's specific performance of the plea agreement required the Court to impose a sentence not exceeding 36 months.  For the reasons discussed below, the Court finds that Defendant's appeal does not raise a substantial question of law or fact that will result in a reduced sentence as required by 18 U.S.C. § 3143(b)(1)(B)(iv).

## A.    Defendant's Objection that Government breached by advocating for greater sentence

Defendant claims that the Court erred in failing to rule upon his objection that the Government had breached the plea agreement by advocating for a sentence exceeding 36 months.

But based on the procedural course of this case, such an objection was moot.  In its August 27 Memorandum Order, this Court found that Defendant had breached the plea agreement.  In the plea agreement, the parties had agreed to make a joint recommendation to the Court that Defendant not receive a sentence exceeding 36 months.  Based on the Court's August 27 ruling that Defendant had breached the plea agreement, the Government took the position that it was no

longer bound by the plea agreement, and that it could properly advocate for a sentence exceeding 36 months. But, the Court later granted Defendant's motion to reconsider its ruling, and in its October 28 Memorandum Order, the Court concluded that Defendant had not breached the plea agreement; the Court further concluded that both parties were bound by the terms in the plea agreement. In response, the Government ceased advocating for a sentence exceeding 36 months. Thus, at the time of the final sentencing hearing in November, any objection that the Government was breaching the plea agreement by advocating for a sentence exceeding 36 months, was moot. The Government no longer was advocating for a sentence exceeding 36 months, in light of the Court's October decision that the parties were bound by their agreement to jointly recommend a sentence of no more than 36 months. In fact, at the sentencing hearing, the Government recommended a sentence of 36 months, consistent with the plea agreement.

**B.      Defendant's Objection that Government breached by filing new charges**

At the November final sentencing hearing, Defendant argued that the Government had also breached the plea agreement by filing new charges. Defendant mistakenly argues that the Court failed to rule on this objection. In fact, the Court ruled that this objection was more properly raised as a motion to dismiss filed in the new case. In the context of such a motion to dismiss, the Court could hear evidence as to whether the new charges were based on information gained in a manner that was violative of the plea agreement. If they were, the proper remedy would be dismissal of that case. Thus, in essence the Court denied this objection, without prejudice to Defendant raising the issue in the new case. In any event, the Government shortly thereafter dismissed the new case, such that this issue is now moot as well.

C.     **Defendant's Objection to the Court's specific performance of the plea agreement**

In its October 28 Memorandum and Order, the Court found that the parties were bound by the terms of the plea agreement, including their agreement to jointly recommend a sentence not exceeding 36 months.  In essence, the Court effected specific performance of the plea agreement. The Court further found that it was not bound by the terms of the plea agreement, since the plea agreement was not binding upon the Court.  Defendant argues that in ordering specific performance of the plea agreement, the Court was somehow bound to sentence Defendant to no more than 36 months, the bargained-for maximum joint recommendation in the plea agreement.  This argument is without merit.

Not surprisingly, Defendant points to no authority for his proposition that in ordering specific performance of the non-binding plea agreement, the Court lost its judicial discretion to render a sentence it deemed appropriate.  The parties entered into a non-binding plea agreement, something that is evident from the plea agreement itself, and that Defendant acknowledged during his colloquy with the Court at the plea hearing.  Defendant acknowledged that the Guidelines are advisory only and leave the sentencing judge a great deal of discretion.[7] Defendant acknowledged that irrespective of his lawyer's estimates, he might receive the maximum sentence of five years in prison.[8]  And Defendant acknowledged that although he and the Government had agreed to make certain recommendations to the sentencing judge, those recommendations were not binding on the judge, that the judge was free to impose a more severe sentence than the sentence recommended, and that if the judge rejected the recommendation, that

---

[7]Plea Hrg. Tr., Doc. 83 at 20–21.

[8]*Id.* at 21.

would not give Defendant the basis to withdraw his guilty plea.[9]

It is axiomatic that a plea agreement under Fed. R. Crim. P. 11(c) is a contract between the parties, and the Court is not bound by its terms.  It is also axiomatic that under Rule 11(c)(1)(C), the court is not bound to follow a binding plea agreement, unless the court affirmatively accepts the plea agreement.[10]  This was a non-binding plea agreement; but even if it morphed into a binding plea agreement, this Court never accepted the plea agreement as binding.

### D.    Specific performance proper; other remedies waived

Defendant now argues that the remedy of specific performance was deficient, or insufficient.  He argues that when the Government breaches a plea agreement, there are other remedies, such as allowing the defendant to withdraw his plea, or having another judge sentence the defendant.  In this case, even if the Government breached the plea agreement, Defendant waived these alternative forms of relief, stating at the sentencing hearing, "so the remedy I'm asking for is not to get out of the guilty plea.  Mr. Fisher doesn't want to get out of his guilty plea.  And it's not to get another judge."[11]  In short, Defendant waived those forms of relief, and insisted on a form of relief for which there is no authority—deprivation of the sentencing judge's authority to determine the appropriate sentence and mandating the sentencing judge's compliance with the parties' jointly recommended sentence in a non-binding plea agreement.

---

[9]*Id.* at 21–22.

[10]Fed. R. Crim. P. 11(c)(1)(C).

[11]Sent. Hrg. Tr., Doc. 80 at 10.

### E.       Within-Guidelines sentence justified

In exercising its discretion in sentencing Defendant to 41 months, a sentence at the bottom of the Sentencing Guidelines range, the Court found that the Guidelines range was correctly calculated and acknowledged that it had considered the Guidelines, in that the Guidelines "promote uniformity in sentencing and assist the Court in determining an appropriate sentence by weighing the basic nature of the offense, as well as aggravating and mitigating factors."[12]  The Court did not treat the Guidelines as mandatory, but acknowledged that it was "required pursuant to 18 United States Code, Section 3553(a), to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing identified in the statute."[13]  The Court also acknowledged that it had considered, among other filings, Defendant's motion for variance and the supportive letters and attachments to his motion for variance.[14]

Nevertheless, the Court denied the request for variance and rendered a within-Guidelines sentence.  At the time of final sentencing, the Court noted that Defendant was born and raised by his parents and grandfather in a small town in Kansas.  The Court noted that Defendant attended college periodically and had vocational skills in farming and bricklaying.  The Court found that the offense of conviction involved Defendant reporting fictitious income and filing false tax returns over a period of four years, which enabled him to receive tax refunds from the IRS in a total amount exceeding $4 million.  The Court also noted that Defendant had a history of

---

[12] *Id.* at 31.

[13] *Id.*

[14] *Id.* at 32.

alcohol-related arrests and convictions.  And, the Court noted that although Defendant had told the probation officer who authored the presentence investigation report that he had been working for his parents on their farm since 1996, Defendant's father advised investigating agents that he, the father was the only one who worked on the farm, contradicting Defendant's statement.[15]

Given the protracted nature of the sentencing hearing and associated motions for breach of plea agreement and for reconsideration, during the course of the hearings, and in its written decisions concerning the breach of the plea agreement, the Court made many more findings about the nature and characteristics of Defendant and the nature of the offense, as well as other § 3553 factors.  For example, in its Order granting Defendant's motion to reconsider, the Court found that although Defendant had provided the Government with records tracking his substantial losses in the stock market, as well as records of his substantial cash expenditures, the "remainder of the Court's August 27 Memorandum Order touches on several issues related to Defendant's credibility—issues about which the Court continues to be concerned."[16]

These other issues, addressed in the August 27 Memorandum and Order, were among factors concerning the nature and circumstances of the offense and the history and characteristics of Defendant that the Court considered in determining the appropriate sentence.  As detailed in that decision, there was evidence that while in pretrial detention, Defendant attempted to use PIN calling cards issued to other inmates to place calls from the jail.  Since most calls placed by inmates are recorded, jail officials are able to determine which inmate is engaged in suspect phone conversations, implicating security or revealing criminal behavior, by the PIN of the

---

[15]*Id.*

[16]Doc. 65 at 6.

inmate who placed the particular call.  The Court heard evidence that Defendant attempted to pay other inmates $20 to $30 each to use their PIN calling cards, presumably to avoid detection and monitoring of his outgoing calls.  The Court heard further evidence that Defendant in fact placed a call to his girlfriend, using another inmate's PIN, to direct her to dispose of exercise equipment he had purchased with the proceeds of the tax fraud.  The Court heard evidence that Defendant made this call in the midst of the Government's ongoing attempts to recover the proceeds of the tax fraud, which included $48,000 Defendant used to purchase a warehouse in his mother's name, and $100,000 in exercise equipment Defendant purchased to start a health club in the warehouse building.[17]

The Court also heard evidence that while a pretrial detainee, Defendant was tutoring other inmates on how to obtain fraudulent tax refunds, by setting up sham companies, fraudulently acquiring EINs for those companies, and filing fraudulent tax returns.  Defendant also coached other inmates on creating sham companies to fraudulently obtain loans.[18] Defendant reportedly told other inmates about a scheme involving cattle, which the IRS agent testified came to light during the tax fraud investigation; Defendant sold cattle out of trust, but had repaid the victim bank $25,000 out of the tax fraud proceeds in an attempt to avoid litigation or prosecution.[19]

These among other facts and circumstances, factored into the Court's decision to deny Defendant's request for variance, but to sentence him instead to a within-Guidelines sentence.

---

[17]Doc. 48 at 7–8.

[18]*Id.* at 9.

[19]*Id.* at 10.

Defendant fails to point to any authority that rendered the Court's decision an abuse of discretion.  For the Court had the discretion to fashion the appropriate sentence, based on the Sentencing Guidelines and statutory factors.  Because Defendant's arguments find no support in the rules, statutes, or case law, he does not raise a substantial question that will likely reduce the his sentence at all, much less to a term less than the anticipated time of the appeal.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Appeal Bond (Doc. 90) is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 11, 2015

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

11